**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JOHN HERZOG, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

FLUOR FEDERAL SERVICES, INC., et al.,

*Defendants*.

Case No.: 25-cv-61991-MD

Hon. Melissa Damian

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS CLASS ACTION COMPLAINT WITH PREJUDICE [ECF NO. 70] AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**


INTRODUCTION....................................................................................1

RELEVANT FACTS ...............................................................................2

LEGAL STANDARD ..............................................................................7

ARGUMENT .......................................................................................8

I. PLAINTIFF ADEQUATELY STATES A CLAIM UNDER THE SHERMAN ACT ............................................................. 8

A. PLAINTIFF'S COMPLAINT ADEQUATELY ALLEGES AN ANTITRUST VIOLATION ...................8

B. THE LEVEL OF ANTITRUST SCRUTINY THAT APPLIES TO THIS CASE HAS NO BEARING ON PLAINTIFF'S CLAIMS AT THE PLEADING STAGE ......................................................................10

II. DEFENDANTS ARE NOT ENTITLED TO IMPLIED ANTITRUST IMMUNITY .................................................... 11

III. PLAINTIFF ALLEGES ANTITRUST INJURY AND STANDING.......................................................................... 13

IV. CONCLUSION........................................................................ 13

# **TABLE OF AUTHORITIES**

## **CASES**

*Am. Needle, Inc. v. NFL*, 560 U.S. 183 (2010)….. ........................................................................10

*Ariz. v. Maricopa County Medical Soc.*, 457 U.S. 332 (1982)….. ................................................10

*Arrington v. Burger King Worldwide, Inc.*, 47 F.4th 1247 (11th Cir. 2022)….. .................. *passim*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)….. ..........................................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)….. ...................................................................8, 9

*Cap. Shield, Inc. v. Amwins Access Ins. Servs., LLC*, 2025 U.S. Dist. LEXIS 213816 (M.D. Fla. Oct. 30, 2025)….. ...........................................................................................................8, 9

*Carnation Co. v. Pac. Westbound Conference*, 383 U.S. 213 (1966)….. ..............................12, 13

*DeLong Equip. Co. v. Washington Mills Abrasive Co*., 887 F.2d 1499 (11th Cir. 1989)………... 9

*Deslandes v. McDonald's USA, LLC*, 81 F.4th 699 (7th Cir. 2023)….. ................................11, 12

*ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332 (11th Cir. 2025)….. .....................9

*In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103 (N.D. Cal. 2012)….. .............12

*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010)…...........................................8

*Maralago Cay Homeowners Ass'n v. Mhc Operating*, 2021 U.S. Dist. LEXIS 248397 (S.D. Fla. Aug. 4, 2021)….. ........................................................................................................12

*Name.Space, Inc. v. Network Solutions*, 202 F.3d 573 (2d Cir. 2000)….. ...................................12

*Nat'l Gerimedical Hosp. & Gerontology Ctr. v. Blue Cross of Kansas City*, 452 U.S. 378 (1981)…...........................................................................................................12

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co*., 917 F.3d 1249 (11th Cir. 2019)….. ...........................................................................................................9

*Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555 (11th Cir. 1991)….. ................................8

*Texaco v. Dagher*, 547 U.S. 1 (2006)….. ...........................................................................10

*U.S. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 422 U.S. 694 (1975)…..................................................12

**STATUTES**

Sherman Act § 1 ........ *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2) ........ 8

Fed. R. Civ. P. 12(b)(6) ........ 8

## INTRODUCTION

Plaintiff has adequately alleged an antitrust conspiracy among and between prime contractor Defendant Fluor and the five Subcontractor Defendants.[1] The heart of the alleged conspiracy: Defendants agreed to sweeping no-poaching, non-solicitation, and wage-fixing agreements. Under the terms of the conspiracy, all Defendants agreed that they would not hire workers from any other Defendants' roster. That agreement in restraint of trade was explicit and harmed labor market competition, limiting employee mobility and suppressing wages. Plaintiff alleges, albeit on information and belief, that Defendants agreed to fix wages. But that is only a part of the antitrust violation alleged. Whether by express agreement or by virtue of their conspiracy in restraint of the relevant labor market, Defendants successfully suppressed wages. That is an antitrust violation.

In this context, debates over a restraint being vertical or horizontal obscure the real issue. This is not a consumer-market antitrust case. This is a labor market antitrust case. The real anticompetitive work here is being done at the horizontal level. To the workers involved, the market is flat: switching to any other contractor (Fluor) or subcontractor (the Subcontractor Defendants) is a fundamentally horizontal move. And the restraint operates and effects the relevant market in a horizontal fashion. That Fluor sits in the position of prime contractor does not change that labor market reality. Even if we put that market reality aside and assume that Fluor itself operates in the vertical chain for purposes of the labor market, Plaintiff still states a claim. Because the competitive restraints demanded by Fluor and agreed to by each Subcontractor Defendant were fundamentally horizontal in nature and effect (i.e., impacting the mobility of

[1] Together, Atkinson, BJMC, iParametrics, EMP, and Novaces are referred to as the Subcontractor Defendants.

workers from one Subcontractor to another). In a similar context, the Eleventh Circuit held that Burger King's no-poaching agreements that prevented Burger King franchisee's from hiring workers from other franchisee's plausibly stated an antitrust violation that reduced worker mobility, limited worker benefits, and suppressed workers' pay. *Arrington v. Burger King Worldwide, Inc*., 47 F.4th 1247, 1254–55 (11th Cir. 2022). In *Arrington,* the Eleventh Circuit reached that conclusion (sustaining the claim) without reference to any applicable level of antitrust scrutiny. Whether Plaintiff's claim is suitable for *per se* treatment, a quick look analysis, or even a full-blown rule of reason analysis is a question for summary judgment or trial. Defendants' Motion to Dismiss should be denied.

## RELEVANT FACTS

Plaintiff is and was a Florida resident who worked as a FEMA Technical Assistance Contracting ("**TAC**") subcontractor for Defendant Atkinson in 2023 through his single-member Florida LLC. Complaint, ECF No. 1, at ¶ 7. Plaintiff's March 30, 2023 "Subcontract Agreement for Services" with Atkinson acknowledged that Atkinson had entered into a contract with Fluor—a prime contractor with FEMA—to provide FEMA TAC services for which the specialized expertise of Plaintiff was requested. *Id*.

During the relevant time period, FEMA awarded Fluor the prime contracts for (a) FEMA Public Assistance Technical Assistance Contract ("**PA TAC**") IV for Zone 1 (regions 1, 3, and 4) and (b) PA TAC V for the East Zone (regions 3 and 4), with exclusive FEMA PA TAC contracts for specific regions of the United States. *Id*. ¶ 8. All of the Subcontractor Defendants entered into subcontracts with Fluor to provide FEMA TAC disaster recovery services under Fluor's prime contracts with FEMA. *Id*. ¶¶ 9-13.

Plaintiff first became aware of Defendants' non-solicitation and anti-poaching agreements in 2022, when he attempted to move from Atkinson's roster to another Fluor subcontractor roster and began interviewing with the Subcontractor Defendants. *Id.* ¶ 20. Plaintiff alleges that Defendants entered, adhered to, enforced, and reaffirmed the anticompetitive non-solicitation, anti-poach, and wage-fixing agreements. Complaint, ¶¶ 1-3, 16-35. Plaintiff alleges that "all of the Defendants entered into mutual non-solicitation and anti-poaching agreements with the common interest and intention to keep their [workers'] wage costs down, so that profits continued to rise or at least not be undercut by rising wages across the industry," (*id.* ¶ 34) and that the desired effect of the overarching conspiracy to suppress employee wages was obtained. *Id.* ¶ 40.

Plaintiff alleges detailed and specific facts supporting the anti-solicitation and anti-poaching agreement allegations as to every named Defendant. *See, id.* at ¶¶ 18, 20-25, 28. Plaintiff alleges that every Defendant confirmed the existence of the no-poaching or no-hire agreement and explicitly stated that reason as the reason why they could not consider him for employment opportunities. *Id.* ¶¶ 18, 20-25, 28, 30-32.

Specifically:

- Plaintiff personally spoke with iParametrics' Resource Manager (Heidi Schuster) in summer 2022 and with iParametrics' Recruiter (Carrie Schuster) in September 2022. Both informed Plaintiff that because he was on the roster of another Fluor subcontractor (i.e., Atkinson), iParametrics could not even speak with him about potential FEMA PA TAC opportunities. Both unequivocally confirmed the reason they could not consider Plaintiff for FEMA work opportunities was due to Fluor's rigid anti-poaching mandate. Complaint, ¶ 21.

- Plaintiff spoke with BJMC President, Cole Cullen, in February 2022 and in November 2022. On both occasions, Mr. Cullen informed Plaintiff via telephone—after learning that Plaintiff was on Atkinson's roster under Fluor's prime contract—that he could not talk to Plaintiff because Fluor has an anti-poaching mandate. *Id.* ¶ 22. Plaintiff spoke with Mr. Cullen a third time on November 21, 2024, and Mr. Cullen stated to Plaintiff unequivocally that BJMC adheres to Fluor's mandate regarding an express anti-poaching for employees and independent subcontractors. *Id.* ¶ 28. On November 25, 2024, Plaintiff mailed a letter to Mr. Cullen via USPS Certified Mail memorializing their November 21, 2024 conversation. *Id.*

- In approximately October and November 2022, Plaintiff sent his resume to, and also called, Novaces' Manager of Disaster Management Services, Geoffrey C. Brien. Mr. Brien immediately asked Plaintiff if he was on any other Fluor subcontractor's roster, and when Plaintiff informed Mr. Brien that he was on Atkinson's roster, Mr. Brien told Plaintiff that Fluor does not allow Novaces to hire subcontractors from other Fluor subcontractors, and that Fluor has a strict anti-poaching requirement. *Id.* ¶ 23. Further, Mr. Brien was the author of a February 16, 2021 email through which he provided details and information as to applications for FEMA subcontractor positions with Novaces, and Mr. Brien explicitly stated in his email that "If you are currently on another FLUOR Subcontractor's Roster, you cannot join the NOVACES – IEM Roster. Below is a list of Fluor Subcontractors…." *Id.* ¶ 18. Mr. Brien's February 16, 2021 email further stated that "By submitting your application to join the NOVACES FEMA PA-TAC Roster under Fluor, you must commit to cease negotiations with all existing FLUOR subcontractors. FLUOR will uncover [sic]

you attempted to join 2 or more Rosters which violates FEMA guidelines." *Id.* Mr. Brien's "list of Fluor Subcontractors" included Atkinson, BJMC, iParametrics, and EMP. *Id.* n.1.

- Plaintiff spoke with an EMP representative during the relevant time period about FEMA PA TAC opportunities and was told that EMP cannot speak with Plaintiff since he was on Atkinson's roster and because Fluor has an anti-poaching mandate. *Id.* ¶ 24. Again, EMP was also listed as a Fluor Subcontractor in Mr. Brien's February 16, 2021 email. *Id.* n.1.

- In 2022, Plaintiff spoke with Atkinson's Federal Program Manager, Melissa Everett. During their conversation, Ms. Everett confirmed Fluor's anti-poaching agreement by telling Plaintiff that Fluor has a rigid policy on not poaching PA TAC subcontractors. Ms. Everett confirmed that Fluor's anti-poaching mandate meant that Plaintiff could not move from Atkinson to another Fluor FEMA PA TAC IV approved subcontractor. *Id*. ¶ 25.

- Plaintiff alleges that many Subcontractor Defendants also told Plaintiff that the reason they complied with Fluor's non-solicitation and no-poach mandate was because Fluor threatened punitive measures against them and/or because they did not want to risk their relationship with Fluor. *Id.* ¶¶ 21, 23, 28.

- Upon information and belief, and as alleged in the Complaint, Defendants' actions restricted worker mobility and artificially suppressed wages. *Id*. ¶¶ 15, 34, 40, 46. As a result of the alleged conspiracy, Plaintiff lost wages. *Id*. ¶ 7.

- As to Defendants' wage-fixing agreement, Plaintiff has alleged that he became aware of the conspiracy based on his personal experience of Atkinson fixing his hourly wage rate at the time he received and completed a pre-deployment agreement in early-2023, and that he had discussions with Atkinson regarding the same in which Atkinson informed Plaintiff that the offered hourly pay rate was a standard, non-negotiable rate offered on a take-it-or-leave-it basis. *Id*. ¶¶ 2, 30. Plaintiff alleges that he subsequently learned through direct conversations with at least four other Atkinson workers between May and June of 2023 that Atkinson also fixed their hourly rates through take-it-or-leave it, no-bid offers. *Id*. ¶¶ 2, 31. Plaintiff also alleges, on information and belief, that Fluor sets and dictates pre-determined and fixed hourly rates to be paid by Fluor to the Subcontractor Defendants and to their rosters of FEMA PA TAC services workers. *Id*. ¶ 32.

- Plaintiff has no access to Defendants' records and has not yet conducted any discovery to corroborate and prosecute his antitrust claims. Plaintiff alleges—based on his conversations and correspondence with Defendants—that he and the class were prohibited from being employed or even considered for FEMA work opportunities by the Subcontractor Defendants if they were on any other Fluor subcontractor's roster. Fluor mandated and enforced this labor market allocation, and all Defendants are liable for it. *Id*. ¶¶ 15, 34, 40, 46.

- Plaintiff seeks to represent a class pursuant to Rule 23 consisting of "All persons who worked as a subcontractor or employee for any of the Defendants to provide FEMA TAC services under or in relation to Defendant Fluor Federal Services, Inc.'s prime contract

with FEMA within Zone 1 of FEMA PA TAC IV (regions 1, 3, and 4) and/or its prime contract with FEMA within the East Zone of FEMA PA TAC V (regions 3 and 4) (the "class members") at any time from October 3, 2021 through the conclusion of this action (the "Class Period")." *Id.* ¶ 51.

## **LEGAL STANDARD**

At the pleading stage, Plaintiff has carried his burden. This case does not involve a debate about *Twombly* and innocent parallel business conduct. That is the picture Defendants paint and the inference they want the Court to draw. But that is not what the Complaint alleges (in detail) and the Defendants are not entitled to any inferences in their favor at this stage.

The Federal Rules require only that a plaintiff provide a short and plain statement of the claim that will give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6). Detailed allegations are not required. A complaint need only allege sufficient facts that, if taken as true, state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). "[S]tating a [Section 1] claim requires a complaint with enough factual matter to suggest an agreement. Asking for probable grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556.

At the pleading stage, an antitrust claim must allege facts that tend to exclude the possibility of independent action. *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1342-43 (11th Cir. 2010). Allegations of parallel conduct alone are not enough. *See Twombly*, 550 U.S. at 564-65. But formal agreements are not required and most conspiracies in restraint of trade are

"inferred from the behavior of the alleged conspirators." *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1574 (11th Cir. 1991) (citation omitted); *see also Cap. Shield, Inc. v. Amwins Access Ins. Servs., LLC*, 2025 U.S. Dist. LEXIS 213816, at *14 (M.D. Fla. Oct. 30, 2025) ("Direct evidence of a Sherman Act conspiracy is not the norm, and most antitrust conspiracies are alleged and established using circumstantial evidence." ) (citing *DeLong Equip. Co. v. Washington Mills Abrasive Co*., 887 F.2d 1499, 1515 (11th Cir. 1989)).

There is no heightened fact pleading standard for antitrust cases. *See Twombly*, 550 U.S. at 570. When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences—as true and construe them in the light most favorable to the non-moving party. *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1340 (11th Cir. 2025).

## ARGUMENT

### I. PLAINTIFF ADEQUATELY STATES A CLAIM UNDER THE SHERMAN ACT

To establish a Section 1 claim under the Sherman Act, a plaintiff must demonstrate (1) a conspiracy that (2) unreasonably (3) restrains trade. *See, e.g., Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co*., 917 F.3d 1249, 1260 (11th Cir. 2019).

#### A. PLAINTIFF'S COMPLAINT ADEQUATELY ALLEGES AN ANTITRUST VIOLATION

Plaintiff alleges that Fluor and five separate subcontractors agreed that none would hire from any other contractor or subcontractor's roster. Complaint, ¶¶ 17–32. Plaintiff alleges this agreement limited worker mobility and suppressed wages. That is the crux of the conspiracy. Plaintiff further alleges that the Defendants agreed to fix wages. Such an agreement operates to restrain labor mobility in a horizontal manner. Because from the perspective of the workers, the labor market is flat. The conspiracy deprived Plaintiff and other workers of job opportunities that

were functionally interchangeable while suppressing their wages. Every Defendant is a separate economic actor pursuing its own economic interests in the FEMA labor market. This states an antitrust claim.

Defendants argue that because the case involves prime contractor Fluor and the remaining Subcontractor Defendants, that the restraint at issue is unequivocally vertical and that this mandates dismissal. *See* Defendants' Motion to Dismiss, ECF No. 70, at 16-17.[2] But that elevates form over substance and that is not the law. The debate over vertical or horizontal is not dispositive. That Fluor sits above the Subcontractor Defendants in one specific sense does not change the underlying labor market dynamics. That is the point *Arrington* was making. *See Arrington*, 47 F.4th at 1253-56 (Burger King franchisee no-poaching agreements mandated by Burger King itself stated an antitrust violation). The defendants in *Arrington* were independently owned and operated and separate legal entities. *Id*. They had separate economic interests. *Id*. Absent their no-poaching agreement, they would have made their own hiring decisions and set their own wages. *Id*. The same market dynamic exists in this case. That Fluor sits above the Subcontractor Defendants on the FEMA contract does not undermine *Arrington*'s logic. *See also Am. Needle, Inc. v. NFL*, 560 U.S. 183 (2010) (decided on summary judgment and finding individual NFL teams are subject to Section 1 liability); *Texaco v. Dagher*, 547 U.S. 1, 7, n.2 (2006) (presuming that a joint venture made up of two or more entities is subject to Section 1 scrutiny); *Ariz. v. Maricopa County Medical Soc.*, 457 U.S. 332, 336-37, 356-57 (1982) (decided on summary judgment and holding that physicians were individually liable, notwithstanding membership in medical societies, and therefore subject to Section 1 liability).

---

[2] All Motion to Dismiss pin cites refer to the ECF page number(s), e.g., 16-17 of 41.

Plaintiff alleges that the non-solicitation, anti-poach, and wage-fixing agreements are between Defendants who are each in the business of providing professional and technical disaster recovery services to FEMA, and that the agreements were advanced for the common purpose of limiting employee mobility, suppressing wages, and wrongfully increasing profits at the expense of the workers. The mere fact that the Defendants in this case are involved in a prime contractor / sub-contractor relationship relating to FEMA disaster relief does not operate as a blanket grant of antitrust immunity as a matter of law.

### B. THE LEVEL OF ANTITRUST SCRUTINY THAT APPLIES TO THIS CASE HAS NO BEARING ON PLAINTIFF'S CLAIMS AT THE PLEADING STAGE

Plaintiff plausibly states a Section 1 antitrust claim. That is the end of the inquiry at the pleading stage. Defendant argues that the Court should hold that Plaintiff's claims are subject to rule of reason scrutiny, cannot survive such scrutiny, and must be dismissed. But that is not Eleventh Circuit law. Once again, in *Arrington*, the Eleventh Circuit held that the plaintiff plausibly stated a Section 1 antitrust claim without deciding which level of antitrust scrutiny applied. *See Arrington*, 47 F.4th at 1258. The same logic applies here. Plaintiff's allegations mirror those of the plaintiff in *Arrington*. Plaintiff states a claim, the case moves forward, and the applicable level of scrutiny can be resolved at summary judgment and even at trial if necessary.

Plaintiff naturally maintains that Defendants' conduct should be deemed a *per se* antitrust violation because that conduct involves no-poaching agreements among competitors in the labor market. Courts have deemed similar restraints plausible *per se* antitrust violations. *See Deslandes v. McDonald's USA, LLC*, 81 F.4th 699, 703 (7th Cir. 2023) (McDonald's use of no-poaching agreements among itself and franchisees plausibly constituted horizontal restraint and was potentially a *per se* antitrust violation). In *Deslandes*, the Seventh Circuit explicitly cautioned that

"the district judge jettisoned the *per se* rule too early." So, *per se* scrutiny might apply here. Or a quick look analysis might ultimately apply. But now is not the time to make that decision. "Once a complaint has identified a plausible antitrust claim, further development requires discovery, economic analysis, and potentially a trial." *Deslandes,* 81 F.4th 699 at 705. That logic applies here. Defendants are already talking about pro-competitive justifications. Those types of arguments are best left for summary judgment or trial. *See In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103 (N.D. Cal. 2012) (denying motion to dismiss and holding that plaintiff adequately alleged a no-poaching antitrust conspiracy and holding that decision regarding which level of antitrust scrutiny applied would be more appropriate at summary judgment).

## II. DEFENDANTS ARE NOT ENTITLED TO IMPLIED ANTITRUST IMMUNITY

Defendants are not entitled to implied antitrust immunity. Defendants do not identify any statute, rule, or regulation granting FEMA contractors and subcontractors blanket antitrust immunity. Instead, Defendants argue that antitrust immunity is implied because FEMA is highly regulated and maintains certain roster requirements. But Defendants stop there, at that level of general argument. Defendants do not explicitly argue that FEMA required them to implement and enforce no-poaching restrictions and conspire to suppress wages.

It is true that private parties may have certain antitrust immunity to the extent they are acting at the direction of federal agencies. *See, e.g., Name.Space, Inc. v. Network Solutions*, 202 F.3d 573, 580 (2d Cir. 2000) (holding that private parties may have certain antitrust immunity to the extent they are acting at the direction of federal agencies). But implied antitrust immunity is not favored and courts do not make such a finding without a clear conflict between the antitrust laws and the regulatory system. *See Maralago Cay Homeowners Ass'n v. Mhc Operating*, 2021 U.S. Dist. LEXIS 248397, at *8 (S.D. Fla. Aug. 4, 2021) (citing *Nat'l Gerimedical Hosp. &*

*Gerontology Ctr. v. Blue Cross of Kansas City*, 452 U.S. 378, 388 (1981)); *see also U.S. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 422 U.S. 694, 720 (1975); *Carnation Co. v. Pac. Westbound Conference*, 383 U.S. 213, 218 (1966) ("[C]ourts cannot lightly assume that the enactment of a special regulatory scheme for particular aspects of an industry was intended to render the more general provisions of the antitrust laws wholly inapplicable to that industry").

Here, Defendants are making a big ask: Dismiss this case at the pleading stage with prejudice. Do not credit Plaintiff's allegations. Draw inferences in favor of Defendants. Assume that FEMA compelled the exact anticompetitive conduct at issue because FEMA's work is highly regulated. And then conclude as a matter of law that all of the Defendants' relevant conduct is categorically immune from antitrust scrutiny. The only way Defendants get there via their Motion to Dismiss is if the Complaint – on its face – alleges anticompetitive conduct that is clearly compelled and directed by FEMA. We do not have that here. Defendants imply that FEMA compelled the anticompetitive conduct at issue, but they never state that explicitly. Instead, Defendants rely on the inference that because FEMA has extensive regulations, those regulations must have controlled the terms of the operative agreements thereby triggering antitrust immunity. At this stage of the case, Defendants do not get the benefit of such a sweeping inference. Ultimately, the relevant analysis will require consideration of any specific FEMA requirements in comparison to the scope and terms of the no-poaching and wage suppression conspiracy that Defendants operated. That is a legal question but one that turns on specific facts that are not yet sufficiently developed in the record. In this specific case, Defendants' argument about antitrust immunity is more properly a question for summary judgment, when the factual record is complete.

## III. PLAINTIFF ALLEGES ANTITRUST INJURY AND STANDING

Plaintiff has alleged that Fluor and the Subcontractor Defendants entered a no-poaching conspiracy that limited worker mobility, suppressed wages, and either explicitly or by operation resulted in wage-fixing. But for Defendant's conduct, Plaintiff would have been able to obtain other opportunities in the market and higher rates of pay. Complaint, ¶¶ 3, 15, 34, 40, 46. This is harm to competition for labor. This is antitrust injury and the type of harm that the antitrust laws are intended to prevent. Workers who are impacted by labor market conspiracies that limit employee mobility and suppress wages plausibly allege antitrust injury and satisfy antitrust standing. *See, e.g., Arrington*, 47 F.4th at 1268–69 (rejecting defendants' challenge to antitrust injury and standing in a similar labor market no-poaching antitrust context).

## IV. CONCLUSION

For all of the foregoing reasons, the Court should deny Defendants' Motion to Dismiss.

Respectfully submitted,

Date: February 19, 2026

/s/ *Jonathan Pollard*

Jonathan Pollard, Fla. Bar No. 83613
jpollard@pollardllc.com

POLLARD PLLC
500 E. Broward Blvd. Suite 950
Fort Lauderdale, FL 33394
Telephone: (954) 332-2380

Brian Denlinger (admitted *pro hac vice*)
bd@ackermanntilajef.com
Craig J. Ackermann (admitted *pro hac vice*)
cja@ackermanntilajef.com
Avi Kreitenberg (admitted *pro hac vice*)
ak@ackermanntilajef.com

ACKERMANN & TILAJEF, P.C.
315 S. Beverly Dr., Ste. #504
Beverly Hills, CA, 90212
Telephone: (310) 277-0614
Facsimile: (310) 277-0635

*Attorneys for Plaintiff and the Putative Class*