**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-61991-CIV-DAMIAN**

**JOHN HERZOG, individually and on behalf of all others similarly situated,**

Plaintiff,

v.

**FLUOR FEDERAL SERVICES, INC.,** ***et al.***,

Defendants.
_______________________________________/

**ORDER ON DEFENDANTS' OMNIBUS**
**MOTION TO DISMISS CLASS ACTION COMPLAINT [ECF NO. 70]**

**THIS CAUSE** is before the Court upon Defendants, Fluor Federal Services, Inc., Atkinson Consulting LLC, BJMC Global, LLC, iParametrics, LLC, Emergency Management Partners, LLC, and Novaces, L.L.C. (collectively, the "Defendants"), Omnibus Motion to Dismiss Class Action Complaint [ECF No. 70 ("Motion")], filed January 20, 2026.

THE COURT has reviewed the Motion to Dismiss and the parties' briefing, the applicable law, and the relevant portions of the record and is otherwise fully advised. For the reasons set forth below, the Motion to Dismiss is due to be granted, albeit without prejudice.

## I. INTRODUCTION

In this putative class action for antitrust violations, Plaintiff, John Herzog, alleges that the Defendants, six companies that provide disaster recovery support services through government contracts, have conspired not to poach, solicit, or hire each other's subcontractors or employees and to suppress the wages they pay their employees, in violation of Section 1 of the Sherman Antitrust Act and the Florida Antitrust Act.

## II. BACKGROUND

### *A. The Parties And Their Roles.*[1]

Each of the Defendants is in the business of providing professional and technical services to the Federal Emergency Management Agency ("FEMA") following natural disasters. Compl. ¶ 36. Relevant here, FEMA awarded Defendant Fluor two prime contracts under the Public Assistance Technical Assistance Contracting ("PA TAC") program for "disaster recovery support" services in different regions throughout the United States. *Id.* ¶¶ 1, 8, 36. As with any business, Fluor, as the prime contractor, competes with other prime contractors for FEMA service contracts. *Id.* ¶ 28.

To complete the services under these FEMA PA TAC contracts, Fluor subcontracted work to the other named Defendants: Atkinson Consulting LLC ("Atkinson"), BJMC Global, LLC ("BJMC"), iParametrics, LLC ("iParametrics"), Emergency Management Partners, LLC ("EMP"), and Novaces, L.L.C. ("Novaces") (collectively, the "Subcontractor Defendants"). The Subcontractor Defendants each entered into separate contracts with Fluor to provide TAC services under Fluor's prime contracts with FEMA. *Id.* ¶ 36. Each of the Subcontractor Defendants then hired employees or entered into separate subcontracts to complete the services required under their individual bilateral contracts with Fluor. *Id.* ¶¶ 9–13, 17.

Plaintiff, John Herzog, worked for one of Fluor's subcontractors, Defendant Atkinson. *Id.* ¶ 7. In the Complaint, Herzog identifies the Class Members as the worker rosters of the

---

[1] This Court accepts the well-pleaded facts in the Complaint as true for purposes of considering the Motion to Dismiss. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Subcontractor Defendants consisting of specialized workers including, "site inspectors, program delivery managers, environment and historic preservation inspectors, hazard mitigation inspectors, cost estimators, TAC-Coordinators, and others." *Id.* ¶ 37. These workers are typically deployed for "disaster recovery support projects" in connection with a particular disaster and limited to "discrete periods of time." *Id.*

***B. Facts Alleged In The Complaint Regarding The Antitrust Conspiracy.***

Herzog alleges, based on personal knowledge derived from his own experience and upon information and belief, that the Defendants agreed to refrain from recruiting or contracting with each other's TAC subcontractors and employees who worked under Fluor's prime contracts with FEMA (*i.e.*, the worker rosters). *Id.* ¶ 16.

According to Herzog, when he tried to move his subcontractor relationship from Atkinson to the other Subcontractor Defendants, he was told repeatedly that he could not apply because of "an anti-poaching mandate" enforced by Fluor. *Id.* ¶¶ 21–25, 28. Herzog claims that this "non-solicitation and anti-poaching agreement" was "not only a bilateral agreement between Fluor and the other [Subcontractor] Defendants," but "also a comprehensive and overarching agreement . . . among all of the Defendants." *Id.* ¶ 17. Herzog alleges that the Defendants also entered into "wage-fixing agreements" and that, as a result, the Subcontractor Defendants offered "fixed hourly wage rates" on a "take-it-or-leave-it basis" to their own subcontractors and employees. *Id.* ¶ 1, 30–32.

Herzog asserts that the Defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1 (Count I), as well as the Florida Antitrust Act, Fla. Stat. § 542.15, *et seq.* (Count II), by "agree[ing] to restrict competition for . . . FEMA TAC services through non-solicitation

agreements, non-poaching agreements, and agreements to fix . . . wage ranges." Compl. ¶¶ 63, 69. He alleges that the challenged conduct is a "*per se* violation[]" of the Sherman Act because its "nature and necessary effect are so plainly anticompetitive." *Id.* ¶¶ 65, 72.

Herzog seeks to recover, on behalf of himself and the purported class, the difference between the wages the Defendants' subcontractors and/or employees were paid and what the subcontractors and/or employees would have been paid but for Defendants' unlawful restraint of trade due to the alleged conspiracies. *Id.* ¶ 35.

***C. The Instant Action.***

On October 3, 2025, Herzog filed the Antitrust Class Action Complaint for violations of both federal and state antitrust laws.[2] Herzog indicates that the action is filed on behalf of himself and a proposed class of subcontractors or employees who worked for any of the Defendants to provide FEMA TAC services under Fluor's two prime contracts with FEMA from four years prior to the filing of the Complaint through the present. *See id.* ¶ 51.

The Defendants filed the Omnibus Motion to Dismiss on January 20, 2026. In the Motion, the Defendants seek dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Mot. at 8.[3] The Defendants also request that the Complaint be dismissed with prejudice on grounds any amendment would be futile. *Id.*

[2] Herzog filed a separate collective action against Atkinson and Fluor to recover unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. *See Herzog v. Atkinson Consulting, LLC, et al.*, No. 25-cv-62006-MD (S.D. Fla. Oct. 6, 2025).

[3] This Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all filings.

The United States of America filed a Statement of Interest pursuant to 28 U.S.C. § 517, which permits the Attorney General to direct any officer in the Department of Justice to attend to the interests of the United States in any case pending in federal or state court. [ECF No. 77]. In the Statement of Interest, the United States addresses two arguments advanced in the Defendants' Motion.

The Motion is fully briefed and ripe for adjudication.

## III. RELEVANT LEGAL STANDARDS

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). This pleading requirement serves to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 570. A plaintiff makes a facially plausible claim when she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate where a plaintiff fails to state a claim upon which relief could be granted. In considering a Rule 12(b)(6) motion, the court's review is generally "limited to the four corners of the complaint."

*Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). The Court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, pleadings that "are no more than conclusions[ ] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679. Dismissal pursuant to a Rule 12(b)(6) motion is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (internal quotation marks omitted) (quoting *Hishon*, 467 U.S. at 73).

## IV. DISCUSSION

Herzog asserts a single federal cause of action for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (Count I).[4] Compl. ¶¶ 62–66. The Defendants argue that the Complaint should be dismissed for five reasons, generally: (1) Herzog's *per se* antitrust claim is based on allegations of vertical restraints within a prime-subcontractor relationship which are not subject to *per se* treatment; (2) Herzog fails to allege an agreement among the Defendants as

[4] Herzog also alleges, on behalf of himself and the proposed class, a violation of the Florida Antitrust Act of 1980, Fla. Stat. § 542.15, *et seq.* (Count II). "The Florida legislature has adopted the antitrust law developed by the federal courts under the Sherman Act." *Okavage Grp., LLC v. United Wholesale Mortg., LLC*, No. 3:21-cv-448, 2022 WL 17478298, at *3 n.4 (M.D. Fla. July 27, 2022) (citing *All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 745 n.11 (11th Cir. 1998)). Therefore, this Court's analysis under Section 1 of the Sherman Act applies equally to the Florida state law antitrust claim, and that claim need not be discussed separately.

needed to state a conspiracy in violation of Section 1 of the Sherman Act; (3) Herzog's claims are barred by implied antitrust immunity in light of FEMA's pervasive regulatory environment; (4) Herzog fails to plead a relevant market affected by the alleged conspiracy to properly allege a cognizable antitrust injury and thus establish antitrust standing; and (5) Herzog's Complaint suffers from impermissible group pleading and fails to allege credible independent facts as to the separate Subcontractor Defendants. *See* Mot. at 9–10. Although Herzog filed a Response, the Response fails to address most of the Defendants' arguments set forth in their Motion and is tantamount to a non-response. *See* S.D. Fla. L.R. 7.1(c) ("Each party opposing a motion shall serve an opposing memorandum of law no later than fourteen (14) days after service of the motion. Failure to do so may be deemed sufficient cause for granting the motion by default."). As stated above, the United States also filed a memorandum directed at the Defendants' arguments regarding *per se* treatment of Herzog's claims and the ancillary restraints doctrine.

***A. Relevant Antitrust Principles.***

Section 1 of the Sherman Act declares illegal "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States . . . ." 15 U.S.C. § 1. *See also Procaps, S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1079–80 (11th Cir. 2016) (describing the interchangeability of use for the terms contract, combination, and conspiracy). The antitrust laws are designed to protect competition, not competitors. *See, e.g.*, *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 145 F.3d 1258, 1262 (11th Cir. 1998) (discussing Section 1 of the Sherman Act). "[T]o establish a Section 1 violation, the plaintiff must first show that there was concerted action between two or more persons—a 'conscious commitment to a common

scheme designed to achieve an unlawful objective'—in restraint of trade." *Procaps*, 845 F.3d at 1080 (quoting *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 768 (1984)).

Therefore, to plead a Section 1 claim, a plaintiff must show (1) a conspiracy that (2) unreasonably restrained trade. *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019) (citing *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1071 (11th Cir. 2004)). Because Section 1 does not forbid all restraints of trade, "the crucial question is whether the challenged anticompetitive conduct stems from independent decision or from an agreement, tacit or express." *Twombly*, 550 U.S. at 553. In other words, "a plaintiff must demonstrate a unity of purpose or common design and understanding, or a meeting of minds in an unlawful arrangement." *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1573 (11th Cir. 1991) (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)). To survive a motion to dismiss, a party alleging a Section 1 violation must provide "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [an] illegal agreement." *Twombly*, 550 U.S. at 556.

***B. Per Se Liability.***

The Defendants first argue that the Complaint must be dismissed because Herzog only alleges *per se* violations of the Sherman Act, whereas the alleged restraints are based on vertical relationships, which cannot be a basis for a *per se* violation. *See* Mot. at 16–20. Herzog responds that the competitive restraints demanded by Fluor and agreed to by each Subcontractor Defendant were fundamentally horizontal in nature and effect, and that the question of whether the relationship among the Defendants is horizontal or vertical is a question that must be addressed at the summary judgment or trial stage and not on a motion

to dismiss. Resp. at 5–6. In their Reply, the Defendants contend that Herzog muddies the waters by alleging what can best be described as a hybrid relationship, that is, a mixed vertical and horizontal relationship, and that, like vertical relationships, the *per se* rule does not apply to such hybrid relationships. *See* Reply at 10. The United States disagrees with the Defendants on this point and avers that courts routinely subject horizontal relationships to *per se* treatment, even when there are also vertical relationships involved. U.S. Statement at 12–13.

As the parties agree, certain categories of restraints on trade are deemed to be *per se* illegal and thus eliminate the need for the Court to consider the reasonableness of the restraint. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (citing *State Oil v. Khan*, 522 U.S. 3, 10 (1997)). "*Per se* liability is reserved for only those agreements that are 'so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality.'" *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006) (quoting *Nat'l Soc. of Pro. Eng'rs v. United States*, 435 U.S. 679, 692 (1978)); *see also All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 748 (11th Cir. 1998)). ("The key to *per se* treatment is whether the conduct is of the kind that can only be anticompetitive."). One such category is a horizontal agreement among competitors to fix prices charged to customers or wages paid to employees. *Texaco*, 547 U.S. at 5 ("Price-fixing agreements between two or more competitors, otherwise known as horizontal price-fixing agreements, fall into the category of arrangements that are *per se* unlawful.") (citing *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647 (1980)); *United States v. Brewbaker*, 87 F.4th 563, 575 & n.7 (4th Cir. 2023) (restating the rule that horizontal price-fixing agreements are *per se* unlawful) (citing *Leegin*, 551 U.S. at 886). There are some exceptions to this rule. *See Nat'l Collegiate Athletic Assoc. v. Bd. of Regents of Univ. of Okla.*, 468

U.S. 85, 100–101 (1984) (exception for industries where "horizontal restraints on competition are essential if the product is to be available at all"); *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 23 (1979) (exception for certain blanket license fees). But, in general, when a plaintiff plausibly pleads that competitors have joined together and agreed on how much they will charge for goods or services, or how much they will pay employees, such a plaintiff may assert a *per se* Section 1 claim.

It has long been recognized that agreements between or among competitors at the same level of the market structure to allocate territories, fix prices or wages, or otherwise minimize competition—referred to as "horizontal restraints"—are classic examples of *per se* violations of Section 1 of the Sherman Act. *See United States v. Topco Assocs., Inc.*, 405 U.S. 596, 608 (1972). Conversely, agreements among individuals or entities at different levels of a market structure, for example between a manufacturer and a distributor or between a franchisor and a franchisee, which are referred to as "vertical restraints," are analyzed under the rule of reason. *See Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 58–59 (1977) (holding non-price vertical restrictions are analyzed under the rule of reason); *see also Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 907 (2007) (holding vertical price restraints are judged according to the rule of reason). The rule of reason is presumed to apply in antitrust cases, rather than the *per se* rule, which applies to a narrower category of alleged restraints. *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 724 (1988).

And then, there are circumstances, like those presented here, in which a plaintiff alleges facts implicating both types of relationships. This Court agrees with the United States that the courts have not altogether foreclosed the possibility that restraints may be *per se*

unreasonable although some parties may be in a vertical relationship. *See Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49–50 (1990) (holding an agreement "unlawful on its face" under the *per se* rule against horizontal market-allocation agreements even though one of the parties not only competed with, but also (vertically) licensed materials from, the other); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218 (1940) (holding that that a conspiracy, whose members included competing oil refiners and their vertically related customers, was horizontal price fixing and thus *per se* unlawful).

Courts generally recognize that "[v]ertical and horizontal price arrangements may intersect." *In Re: Disposable Contact Lens Antitrust Litig.*, 215 F. Supp. 3d 1272, 1291 (M.D. Fla. 2016) (citing *United States v. Apple*, 791 F.3d 290, 314 (2d Cir. 2015)). "One conspiracy can involve both direct competitors and actors up and down the supply chain, and hence consist of both horizontal and vertical agreements[.]" *Id.* (citation omitted). A "hub and spoke" conspiracy is an example of how horizontal and vertical agreements may intersect to form a single conspiracy. *See, e.g.*, *United Am. Corp. v. Bitmain, Inc.*, 530 F. Supp. 3d 1241, 1255–56 (S.D. Fla. 2021) (citations omitted) ("[A] 'hub and spoke' conspiracy[ ] exists where an entity at one level of the market structure (the 'hub') coordinates an agreement among competitors at a different level (the 'spokes').").

At this stage, this Court must determine whether Herzog has alleged sufficient facts to support a claim of a *per se* violation of the Sherman Act in order to withstand dismissal of the Complaint. In the Complaint, Herzog alleges that the "Defendants engaged in *per se* violations of the Sherman Act . . . by entering into non-solicitation, anti-poaching, and wage-fixing agreements for the express purpose of depressing and/or reducing market-based wages for

Class Members that are typically associated with the active recruitment of workers in a competitive industry . . . ." Compl. ¶ 3. As alleged in the Complaint, one of the six Defendants, Fluor, has a vertical relationship with the remaining five Subcontractor Defendants, all of whom have horizontal relationships with each other. Despite the involvement of this vertical relationship, accepting the allegations in the Complaint as true, this Court is satisfied that Herzog alleges sufficient facts demonstrating a horizontal restraint of trade among the Defendants, which can support a claim of a *per se* violation of the Sherman Act.

The next issue, then, is whether the nature of the alleged restraint is the type of restraint that falls within the category of *per se* violations. Generally, when the price of labor is lowered, or wages are suppressed, fewer people take jobs, which "always or almost always tend[s] to restrict competition and decrease output." *See Bus. Elecs. Corp.*, 485 U.S. at 723. Herzog alleges that the Defendants entered into the alleged non-solicitation, anti-poaching, and wage-fixing agreements "for the purpose of depressing and/or reducing market-based wages" for workers. Compl. ¶ 3.

It is also true that some courts have concluded that no-solicitation and no-poach agreements among competitors may be *per se* violations of the Sherman Act. *See, e.g.*, *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1179, 1213–14 (N.D. Cal. 2015) (*per se* violation "to suppress the compensation of the putative class" through an anti-solicitation or no-poach scheme); *see also Deslandes v. McDonald's USA, LLC*, 2018 WL 3105955, at *6 (N.D. Ill. June 25, 2018) (*per se* violation to enter into "[a] horizontal agreement not to hire

competitors' employees") (citing *United States v. eBay, Inc.*, 968 F. Supp. 2d 1030, 1039 (N.D. Cal. 2013)).

Courts routinely recognize that wage-fixing conspiracies—or horizontal agreements among buyers in the labor market—are illegal *per se* like other price-fixing agreements. *See, e.g.*, *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) ("If the plaintiff in this case could allege that defendants actually formed an agreement to fix [ ] salaries, [the] *per se* rule would likely apply."); *Law v. Nat'l Coll. Athletic Ass'n*, 134 F.3d 1010, 1017 (10th Cir. 1998) (finding that NCAA rule limiting salary of basketball coaches would ordinarily be a *per se* violation of § 1 of the Sherman Act); *Cason-Merenda v. Detroit Med. Ctr.*, 862 F. Supp. 2d 603, 624–25 (E.D. Mich. 2012) (noting plaintiffs and defendants agreed that wage fixing "like an analogous horizontal price-fixing conspiracy" should be characterized as a *per se* violation); *Fleischman v. Albany Med. Ctr.*, 728 F. Supp. 2d. 130, 157 (N.D.N.Y. 2010) ("Generally, price-fixing [or in this case wage-fixing] agreements are considered a *per se* violation of the Sherman Act.") (alterations in original) (internal quotations and citations omitted); *Doe v. Ariz. Hosp. & Healthcare Ass'n,* No. CV07-1292, 2009 WL 1423378, at *3–4 (D. Ariz. Mar. 19, 2009) (finding complaint that alleged defendant-hospitals conspired to keep temporary nursing wages below free market level should survive motion to dismiss because agreement was a *per se* illegal price-fixing agreement).

Accepting Herzog's allegations in the Complaint as true, the type of agreement alleged is plainly anticompetitive and has no purpose except stifling competition. Therefore, at this stage of the proceedings, the allegations sufficiently demonstrate a horizontal restraint of trade

subject to the *per se* rule.[5] Thus, the Defendants' Motion is due to be denied to the extent it is based on Herzog's failure to allege a horizontal restraint.

### *C. The Ancillary Restraints Doctrine.*

The Defendants contend that even if the alleged conduct fits into a recognized *per se* category, the restraint is not subject to the *per se* rule if it is ancillary to a legitimate business collaboration. Mot. at 20–21. In other words, the Defendants contend that the purpose of the alleged restraint is to "ensure that Fluor (and by extension FEMA) would not lose personnel while responding under tight timeframes to natural disasters," and, therefore, "is reasonably necessary to this legitimate, procompetitive business collaboration." *Id.* Herzog does not specifically respond to this argument.

The United States avers that the ancillary restraints doctrine, as an exemption from Section 1's *per se* rule, is an affirmative defense to *per se* claims, and that the defendants bear the burden of persuasion on the issue. U.S. Statement at 17 (collecting cases). And as the United States points out, "a plaintiff is not required to negate an affirmative defense in its complaint." *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024) (citation omitted). This Court agrees with the United States that the ancillary restraints doctrine is an affirmative defense, and, therefore, its applicability must be apparent on the face of the Complaint. *See Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020). Because, as discussed below, the Complaint will be dismissed without prejudice, this Court declines to analyze the issue of the doctrine's application based on the current pleading.

---

[5] Whether Herzog will be able to come forward with evidence to prove this relationship is a matter for summary judgment or trial.

***D. Whether Herzog Sufficiently Alleges An Antitrust Conspiracy.***

The Defendants next argue that Herzog has not sufficiently alleged an agreement among competitors to support a conspiracy. Mot. at 22–27. Herzog does not address this argument in the Response.[6] Instead, Herzog broadly avers that the Defendants "agreed that none would hire from any other contractor or subcontractor's roster," and that "this agreement limited worker mobility and suppressed wages. That is the crux of the conspiracy." Resp. at 12. As noted above, Herzog's failure to address specific arguments raised in the Defendants' Motion is problematic and "may be deemed sufficient cause for granting the motion by default." S.D. Fla. Local Rule 7.1(c)(1). *See also Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."); *Diaz v. Gov. Employees Ins. Co.*, No. 17-23673-CIV, 2017 WL 11128354, at *2 (S.D. Fla. Nov. 29, 2017) (finding a party's failure to address an argument in a response as a concession and a basis to grant a motion by default).

As previously stated, to establish a violation under Section 1 of the Sherman Act, a plaintiff must show "concerted action between two or more persons—a conscious commitment to a common scheme designed to achieve an unlawful objective—in restraint of trade." *Procaps*, 845 F.3d at 1080; *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984) (citations omitted). The question of whether a defendant's actions amounted to a contract, combination, or conspiracy is different from, and antecedent to, the question of

[6] Notably, the "Argument" section in Herzog's Response is only five pages.

whether their actions constitute an unreasonable restraint on trade. *See Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 186 (2010).

To allege an agreement for purposes of a Section 1 violation, a plaintiff must allege facts that demonstrate that the challenged anticompetitive conduct stems from an agreement, tacit or express, rather than from independent decision. *Quality Auto Painting*, 917 F.3d at 1261–62 (citing *Twombly*, 550 U.S. at 553). Stated differently, "a plaintiff must demonstrate a unity of purpose or common design and understanding, or a meeting of minds in an unlawful arrangement." *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1573 (11th Cir. 1991) (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810). Importantly, the plausibility pleading standard does not impose a probability requirement. *Quality Auto Painting*, 917 F.3d at 1261 (citing *Twombly*, 550 U.S. at 556). Therefore, a plaintiff must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [an] illegal agreement." *Twombly*, 550 U.S. at 556 (footnote omitted).

A plaintiff may satisfy this pleading requirement with assertions of direct or circumstantial evidence. *See DeLong Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499, 1508 (11th Cir. 1989) (citing *Monsanto Co.*, 465 U.S. at 768). Direct evidence is explicit and does not require courts to make inferences to find an agreement. *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999). Circumstantial evidence requires a court to draw "infer[ences] from the behavior of the alleged conspirators." *Seagood Trading Corp.*, 924 F.2d at 1573 (citation omitted). Antitrust plaintiffs may plead and prove a Section 1 violation with circumstantial evidence of "parallel conduct" plus "some further factual enhancement." *Twombly*, 550 U.S. at 557.

As the parties agree, direct evidence of a Section 1 conspiracy is rare, and most antitrust conspiracies are proven by circumstantial evidence. *DeLong*, 887 F.2d at 1515 ("Conspiracies are rarely evidenced by explicit agreements, and must almost always be proven by inferences that may be fairly drawn from the behavior of the alleged conspirators.") (citation omitted); *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1299–1300 (11th Cir. 2003) ("It is only in rare cases that a plaintiff can establish the existence of a conspiracy by showing an explicit agreement; most conspiracies are inferred from the behavior of the alleged conspirators, and from other circumstantial evidence (economic and otherwise), such as barriers to entry and other market conditions." (internal quotations and citations omitted); *see also In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010) ("Circumstantial evidence can establish an antitrust conspiracy." (collecting cases).

In the Complaint, Herzog alleges the existence of three agreements among the Defendants: (1) a non-solicitation agreement, (2) an anti-poaching agreement, and (3) a wage fixing agreement. Compl. ¶ 3. The Defendants argue that Herzog fails to sufficiently allege a conspiracy to engage in any of these agreements through direct or circumstantial evidence. Mot. at 22–27. They contend that Herzog's allegations merely reflect certain Defendants' unilateral decision(s) not to hire a worker or the independent expression of each subcontractor's hiring practices. *Id.* The Defendants also argue that Herzog's allegations are bare and conclusory and that there are no allegations of parallel conduct and no allegations of plus factors as required to show a conspiracy or agreement based on circumstantial evidence. Mot. at 24–27. More specifically, the Defendants aver that the Complaint contains no factual allegations showing parallel offers regarding compensation or even allegations as

to how different subcontractors pay their workers. At bottom, the Defendants assert that in the absence of allegations about what any Subcontractor Defendants pay their workers, the Complaint fails to demonstrate that there is parallel conduct, and, therefore, that the Complaint is due to be dismissed for lack of allegations demonstrating circumstantial evidence of a wage-fixing agreement.

As noted above, Herzog does not respond to the Defendants' arguments on this issue. This Court observes that the Complaint includes at least 20 paragraphs purporting to explain the various agreements among the Defendants. Some of those allegations include what appears to be direct evidence of some agreements whereas some are based on speculation. Herzog's failure to rebut the Defendants' challenges to those allegations puts the onus on the Court to cull through the Complaint to attempt to piece together an antitrust claim for him. This Court will not expend limited judicial resources addressing arguments on Herzog's behalf that he himself has not attempted to address in the Response. Therefore, due to Herzog's failure to respond to the Defendants' argument on this issue, this Court will grant the Motion by default to the extent it seeks dismissal of the Complaint for failure to sufficiently allege a conspiracy or agreement among the Defendants.

***E. Antitrust Immunity Based On FEMA's Regulatory Context.***

The Defendants next argue that they are entitled to implied antitrust immunity. Mot. at 27–30. More specifically, the Defendants aver that the alleged anticompetitive conduct takes place within a pervasively regulated framework established and overseen by FEMA to facilitate quick and expansive responses to natural disasters and other crises. According to the Defendants, FEMA requires its prime contractors to be subject to its regulations and agree to

its standard contract clauses, which, necessarily, affects Fluor's relationships with its subcontractors and the subcontractors' relationships with the workers providing labor to support FEMA's contracts. *Id.* at 29. In response, Herzog acknowledges that private parties may have certain antitrust immunity to the extent they are acting at the direction of federal agencies. Resp. at 15. Herzog nonetheless contends that the Defendants are not entitled to such antitrust immunity because they do not identify any statute, rule, or regulation granting FEMA contractors and subcontractors blanket antitrust immunity. *Id.*

As Herzog points out, "[i]mplied antitrust immunity is not favored, and can be justified only by a convincing showing of clear repugnancy between the antitrust laws and the regulatory system." *Maralago Cay Homeowners Ass'n, Inc. v. MHC Op. Ltd. P'ship*, No. 21-80049-CV, 2021 WL 6135181, at *3 (S.D. Fla. Aug. 5, 2021) (Middlebrooks, J.) (citing *Nat'l Gerimedical Hosp. & Gerontology Ctr. v. Blue Cross of Kansas City*, 452 U.S. 378, 388 (1981)). The Defendants have not offered a convincing argument or binding authority establishing this defense in the context of this case as a matter of law, and, therefore, they have not shown that dismissal on this basis is warranted. In any event, as this Court has already determined that the Complaint is due to be dismissed, on other grounds, this issue need not be reached at this time.

***F. Antitrust Injury Or Standing.***

The Defendants also contend that Herzog does not have standing to pursue his Sherman Act claim because he has not demonstrated that he has suffered an antitrust injury. Mot. at 30–31. Specifically, the Defendants argue that Herzog fails to allege an antitrust injury because he does not allege that he was precluded from working for other prime contractors

with similar FEMA service contracts. The Defendants further argue that Herzog offers no market definition and alleges no market-wide effects to establish an antitrust injury. Herzog responds that he adequately alleges antitrust injury and standing. Resp. at 17. According to Herzog, but for the Defendants' unlawful conduct, he would have been able to obtain other opportunities in the market and higher rates of pay. Herzog asserts that harm to competition for labor is itself an antitrust injury and the type of harm that the antitrust laws were intended to prevent. *Id.*

A threshold requirement in any private[7] antitrust suit is that the plaintiff have standing to bring such a suit. "Standing in an antitrust case involves more than the 'case or controversy' requirement that drives constitutional standing." *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1448 (11th Cir. 1991). "[A]ntitrust standing is not simply a search for an injury in fact; it involves an analysis of prudential considerations aimed at preserving the effective enforcement of the antitrust laws." *Id.* (citations omitted). As the Eleventh Circuit put it, antitrust standing is "best understood in a general sense as a search for the proper plaintiff to enforce the antitrust laws." *Id.* (citations omitted).

In *Todorov*, the Eleventh Circuit explains that "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Id.* (quoting *Associated Gen. Contractors, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534 (1983)). "Thus, the [Supreme] Court fashioned an approach for analyzing antitrust standing that requires [courts] to 'evaluate the plaintiff's harm, the alleged

[7] The federal antitrust laws provide for both private enforcement and government enforcement. *See generally* 54 Am. Jur. 2d *Monopolies and Restraints of Trade* § 306 (describing enforcement scheme and listing respective statutory sections).

wrongdoing by the defendants, and the relationship between them.'" *Id.* at 1448–49 (quoting *Associated Gen.*, 459 U.S. at 535).

When analyzing antitrust standing, courts apply a two-pronged approach: "First, a court should determine whether the plaintiff suffered 'antitrust injury'; second, the court should determine whether the plaintiff is an efficient enforcer of the antitrust laws, which requires some analysis of the directness or remoteness of the plaintiff's injury." *Id.* at 1449.

1. Antitrust Injury

Antitrust injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489 (1977)). In *Brunswick*, the Supreme Court explained, "The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Id.*; *see also Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) ("The antitrust injury requirement . . . ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." (emphasis in original)). "[A]n antitrust plaintiff must allege and show that his own injury coincides with the public detriment from the alleged violation thereby increasing the likelihood that public and private enforcement will further the same goal of increased competition." *Feldman v. Palmetto Gen. Hosp., Inc.*, 980 F. Supp. 467, 469 (S.D. Fla. 1997) (citing *Todorov*, 921 F.2d at 1450).

"Although 'employees who are precluded from selling their labor have not necessarily suffered an antitrust injury, employees may challenge antitrust violations that are premised on restraining the employment market.'" *Feldman v. American Dawn, Inc.*, 849 F.3d 1333 (11th

Cir. 2017) (quoting *Eichorn v. AT&T Corp.*, 248 F.3d 131, 140–41 (3d Cir. 2001) (internal quotation marks omitted); *see also Tugboat, Inc. v. Mobile Towing Co.*, 534 F.2d 1172, 1176 (5th Cir. 1976). As one commentator aptly explains, "Most courts considering the issue have held that employees suffer 'injury' recognized by the antitrust laws when their employment opportunities are restricted by a no-hire agreement between potential employers, and thus have standing to sue the entity imposing such a provision." Brian R. Henry, '*Sorry, We Can't Hire You . . . We Promised Not To': The Antitrust Implications of Entering Into No–Hire Agreements*, 11 Fall Antitrust 39 (1996).

In *Feldman*, the plaintiff alleged that two businesses engaged in an anticompetitive agreement to monopolize the sale of restaurant linens. 849 F.3d at 1341. The plaintiff alleged that as part of the fallout from that alleged monopoly, he lost his job selling linens. *Id.* The Eleventh Circuit held that the plaintiff's injury was insufficient for standing because the monopoly concerned the *sale* of linens, not the *labor* market for linen-based employees. *Id.* (citing *Eichorn*, 248 F.3d at 141–42 (employees had standing "[b]ecause the no-hire agreement directly impeded plaintiffs' ability to sell their labor to at least three companies within the competitive market"); *Roman v. Cessna Aircraft Company*, 55 F.3d 542, 543–45 (10th Cir. 1995) (former employee of Boeing had standing to challenge an agreement between Boeing and Cessna not to hire employees "away from each other")).

Herzog alleges that he was precluded from selling his skilled labor to at least four of the Subcontractor Defendants, Novaces, iParametrics, BJMC, and EMP, based on the anti-poaching agreement enforced by Fluor. Compl. ¶¶ 18, 20–24. Herzog also alleges injury to competition, namely the injury of depressed prices (wages) to sellers (employees) due to

anticompetitive behavior of buyers (employers). *See id.* ¶¶ 1–3, 34, 45–46 ("Defendants' . . . non-solicitation and anti-poaching agreements ensured that their conspiracy caused the compensation of all their . . . subcontractors and/or employees to be suppressed."). Herzog further alleges that his salary and mobility were suppressed because of the Defendants' non-solicitation and anti-poaching agreements, and that the alleged agreements were entered into to suppress competition for skilled labor. *Id.* ¶¶ 16, 61, 63–64. And Herzog alleges that the Defendants conspired to fix the hourly wages of their subcontractors and employees. *Id.* ¶¶ 40, 45.

Accepting these allegations as true, and viewing them in the light most favorable to Herzog, they are sufficient, at this stage, to allege antitrust injury. *See, e.g.*, *Roman*, 55 F.3d at 544 ("The relevant cases hold that plaintiffs whose opportunities in the employment market have been impaired by an anticompetitive agreement directed at them as a particular segment of employees have suffered an antitrust injury under the governing standard."); *Hunter v. Booz Allen Hamilton, Inc.*, 418 F. Supp. 3d 214, 223 (S.D. Ohio 2019) ("Plaintiffs alleged that the no-poach agreements . . . 'did in fact suppress wages, benefit[s], and other aspects of compensation and eliminate competition.' As such, Plaintiffs have pleaded . . . an injury of the type the antitrust laws were intended to prevent[.]"); *In re: Papa John's Employee and Franchisee Employee Antitrust Litig.*, Case No. 18-cv-825, 2019 WL 5386484 at *9 (W.D. Ky. Oct. 21, 2019) ("Plaintiffs also sufficiently plead antitrust injury. Plaintiffs contend that the No-Hire provision is an agreement not to compete for labor and that the agreement had the purpose and effect of depressing wages and diminishing employment opportunities."); *In re: High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1123 (N.D. Cal. 2012) ("In alleging

that Defendants conspired to fix salaries at artificially low levels, Plaintiffs have alleged 'an example of the type of injury the antitrust laws are meant to protect against.'") (citation omitted).

Accordingly, at this stage, this Court is satisfied that Herzog has set forth sufficient allegations of an antitrust injury of the type the antitrust laws were intended to prevent and that flowed from the Defendants' unlawful acts.

2. Efficient Enforcer

Next, the Court addresses whether Herzog is "an efficient enforcer of the antitrust laws." *Todorov*, 921 F.2d at 1450. In doing so, the Court considers "(1) the directness or indirectness of the asserted injury; (2) whether there exists an identifiable class of persons motivated to vindicate the public interest in antitrust enforcement; (3) the nature of the damages; (4) the importance of avoiding duplicate recoveries; and (5) whether the plaintiff can enforce an antitrust judgment." *Feldman*, 980 F. Supp. at 470 (citing *Todorov*).

The Defendants do not address this second prong in their Motion and, therefore, they do not specifically dispute that Herzog is an efficient enforcer of the antitrust laws. This Court is satisfied that the efficient-enforcer factors favor Herzog. Herzog's injuries are direct, and he alleges that the Defendants' agreements are a restraint of the labor market in which he is a participant. Further, Herzog's injuries are financially motivating and congruent with the public's interest in elimination of the Defendants' alleged non-solicitation, anti-poaching, and wage-fixing arrangements. There is no indication that Herzog and his counsel would be unable to enforce a favorable judgment. Thus, in applying the factors to the allegations in the

Complaint, this Court finds that Herzog is well suited to "efficiently vindicate the goals of the antitrust laws." *Todorov*, 921 F.2d at 1452.

Accordingly, Herzog has sufficiently alleged an antitrust injury and that he is an efficient enforcer, and, therefore, the Motion to Dismiss is denied to the extent it is based on a failure to allege facts sufficient to show a lack of antitrust standing to pursue his claims.

***G. Group Pleading.***

Finally, this Court rejects the Defendants' argument that the Complaint should be dismissed because Herzog engaged in impermissible group pleading by making collective allegations against the Defendants. Mot. at 32–36. The Defendants contend that courts consistently require that plaintiffs plead the involvement of each and every named defendant in an antitrust conspiracy. Notably, the cases cited by the Defendants on this point are from other circuits. In the Eleventh Circuit, "[t]he fact that defendants are accused collectively does not render the complaint deficient," because "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000).

It is true that, generally, the use of group pleading fails to meet federal pleading requirements, particularly in cases involving allegations of fraud. *See Diamond Resorts U.S. Collection Dev., LLC v. Sumday Vacations, LLC*, No. 6:19-cv-982, 2020 WL 3250130, at *2 (M.D. Fla. Feb. 21, 2020). But group pleading can be acceptable in limited circumstances, including in antitrust cases. *See, e.g.*, *In re Auto Body Shop Antitrust Litig.*, No. 6:14-md-2557-Orl-31TBS, 2015 WL 4887882, at *5 (M.D. Fla. June 3, 2015); *see also Spector v. Suzuki Motor of Am., Inc.*, No. 2:17-cv-650-FtM-99CM, 2018 WL 691657, at *3 (M.D. Fla. Feb. 2, 2018)

("While generally a complaint that makes no distinction between defendants' liability is considered a shotgun pleading, a 'complaint that can be fairly read to aver that all defendants are responsible for the alleged conduct' may refer to defendants collectively." (quoting *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000)).

Where, as here, the role of each defendant is not unique and determinative of the defendant's liability, group pleading may be acceptable. *See Baker v. Brunswick Corp.*, No. 2:17-cv-572-FtM-99MRM, 2018 WL 839376, at *2 (M.D. Fla. Feb. 13, 2018). Further, as the Eleventh Circuit has explained, "[w]e read a complaint not in fragments, but "as a whole." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1252 n.11 (11th Cir. 2005). The Complaint here alleges that the Defendants engaged in the same or similar conduct and would have the same or similar liability for the alleged claims. Therefore, while such group pleading is by no means encouraged, the Complaint will not be dismissed because Herzog uses group pleading.[8]

***F. Leave To Amend.***

District courts "have broad discretion in permitting or refusing to grant leave to amend." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). This Court notes that

---

[8] In light of the fact that this Court is requiring Herzog to amend the Complaint, Herzog is admonished to avoid group pleading in his amended pleading and, in particular, to include allegations to support each Defendant's liability.

Herzog, represented by counsel, has not sought leave to amend the Complaint. *See generally* Resp.

Despite this failure, leave to amend should be "freely given" absent a showing of "futility of amendment." *Garfield*, 466 F.3d at 1270 (citing *Foman*, 371 U.S. at 182). At this juncture, this Court does not have enough information to determine that Herzog's claims are futile. "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or immediately subject to summary judgment for the defendant." *Tie Qian v. Sec'y, Dep't of Veterans Affs.*, 432 F. App'x 808, 810 (11th Cir. 2011) (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)). Lacking sufficient information to conclude that Herzog's claims are futile, the Complaint will be dismissed without prejudice and Herzog will be permitted an opportunity to amend his Complaint. Any amended complaint must comply with the Federal Rules of Civil Procedure and correct the pleading deficiencies identified herein.

## V. CONCLUSION

For the reasons discussed above, this Court finds that the Complaint fails to state a claim for violation of Section 1 of the Sherman Antitrust Act and, in turn, the Florida Antitrust Act. However, accepting Herzog's allegations as true, and viewing the allegations in his favor, it is not clear that amendment is futile.

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendants' Omnibus Motion to Dismiss **[ECF No. 70]** is **GRANTED**.

2. Plaintiff's Class Action Complaint [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE**.

3. In the event Plaintiff intends to file an Amended Complaint, he shall do so within **fourteen (14)** days of the date of this Order and comply with this Court's rulings herein.

**DONE AND ORDERED** in the Southern District of Florida, this 30th day of September, 2026.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record